Filed 7/18/13  P. v. Vargas CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL ANGEL VARGAS,<br><br>    Defendant and Appellant. | B239488<br><br>(Los Angeles County<br>Super. Ct. No. NA087206) |

APPEAL from a judgment of the Superior Court of Los Angeles County. James B. Pierce, Judge.  Affirmed in part, reversed in part and remanded.

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Miguel Angel Vargas appeals from the judgment entered following a jury trial that resulted in his convictions for assault on a peace officer with a semiautomatic firearm (Pen. Code, § 245, subd. (d)(2); count 1),[1] during which offense he personally used a firearm (§§ 12022.53, subd. (b), 12022.5, subds. (a) & (d)) and discharged a firearm (§ 12022.53, subd. (c)), and possession of a firearm by a felon (former § 12021, subd. (a)(1); count 3)[2] and court findings that he had suffered a prior serious felony conviction (§ 667, subd. (a)(1)), which qualified as a strike under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d); counts 1 & 3).[3]

He was sentenced to prison on count 1 to 39 years, consisting of 14 years, or double the seven-year middle term for his strike, plus 20 years for the firearm enhancements and five years for the prior serious felony enhancement. The trial court imposed the two-year middle term as to count 3 but ordered this sentence to be served concurrently with the sentence on count 1 pursuant to section 654.

Appellant contends the evidence is insufficient to support his conviction on count 1 for assault on Long Beach Police Officer Dedier Reyes with a semiautomatic firearm and the findings that he personally and intentionally discharged a firearm. He requested this court perform an independent review of the *Pitchess*[4] hearing conducted by the trial court to ensure all discoverable information had been disclosed.

We invited the parties to address these issues: (1) Did the trial court commit unauthorized sentencing error by failing to impose the mandated sentence under the Three Strikes law; (2) If so, should the sentence on count 3 be reversed and the matter

---

[1]    All further section references are to the Penal Code.

[2]    As of January 1, 2012, section 12021 was repealed, and the offense of possession of a firearm by a felon is set forth in section 29800, subdivision (a)(1). (Stats. 2010, ch. 711 (Sen. Bill No. 1080), § 6, operative Jan. 1, 2012.)

[3]    During trial, the court granted a defense motion to dismiss count 2 (§ 1118.1).

[4]    (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).)

2

remanded for resentencing on that count; (3) Is the multiple punishment bar of section 654 inapplicable to a sentence under the Three Strikes law; (4) Is a consecutive sentence mandated if that court determines the counts 1 and 3 offenses were "not committed on the same occasion, and [did] not arise[] from the same set of operative facts" (§ 667, subd. (c)(6)); and (5) If not, may the trial court exercise its discretion to impose a consecutive or concurrent sentence on count 3?  We have received their responses.

We conclude the trial court erred in sentencing appellant on count 3.  The court erred in imposing a concurrent sentence under section 654 and in failing to double the two-year middle term for appellant's strike to four years.  We remand the matter to that court with directions to determine whether a consecutive sentence on count 3 of 16 months, or one-third the middle term as doubled for his strike, is mandated under the Three Strikes law and, if not, to exercise its discretion to impose a consecutive or concurrent sentence.  In all other respects, we affirm the judgment.

## BACKGROUND

On October 16, 2010, appellant attended a birthday party on Cerritos Avenue in Long Beach.  Appellant's brother, Gerardo, saw a black object bulging from appellant's pocket, which led him to believe appellant had a gun.  A "couple days before the party," appellant had shown Gerardo his black semiautomatic handgun.

About 7:30 p.m., Long Beach police responded to a report of someone with a gun at a party in that vicinity.  Sergeant Timothy Long and Detectives Jeffrey Conrad and Richard Armond, who wore jackets marked "police," parked their vehicle by an alley close to that location.  As they were proceeding on foot down the alley three individuals approached from the other end.  One of the individuals adjusted the clothing around his waistband, which indicated to Detective Armond that the individual may have a weapon in his waistband.  Upon seeing the officers, the individual made a U-turn and began to run.  Detective Armond gave chase but lost him.  He then heard about five or six shots.  Sergeant Long also heard about five to six shots.

3

After uniformed Long Beach Police Officers Dedier Reyes and Rudy Garcia approached on foot to the intersection of Hellman Street and Cerritos, they received a dispatch call that the armed person had left the party and he was running towards them. Looking north on Cerritos, Officer Reyes noticed appellant, who matched the suspect's physical description. Appellant had his right hand in his waistband as he ran toward the officers.

After looking in the officers' direction, appellant ran southwest diagonally across Hellman. Officer Reyes yelled for him to stop and gave chase. Officer Garcia followed. Appellant looked back at Officer Reyes but continued running until he turned south into an alley. At the alley entrance, Officer Reyes saw a black gun in appellant's right hand. Officer Reyes became fearful when appellant began to turn right, with gun in hand, towards him.

After yelling a gun warning to Officer Garcia, Officer Reyes fired once, paused, and fired again at appellant, who still held his gun. During the shooting, Officer Reyes did not hear or see appellant fire his own gun at the same time. Officer Reyes believed he was unable to differentiate the rounds fired, because his own rounds were "very loud" and prevented him from doing so. Appellant, who no longer held his gun, fell to the ground.

After falling, appellant rolled. Turning back toward the officers, appellant reached at his waistband and grabbed a black object. Officer Garcia yelled at him to turn onto his stomach. When appellant raised his hand holding the object, Officer Garcia fired two shots at him. Appellant threw the object further into the alley. Officer Garcia believed it was a gun but in fact it was a black cell phone.

After handcuffing appellant, the officers discovered a nine-millimeter casing under appellant. Neither officer had a nine-millimeter handgun.

Appellant's black, semiautomatic nine-millimeter gun was found in the yard of a house adjacent to the "pretty narrow" alley. Officer Reyes did not see appellant toss the gun but he had turned away after firing the two shots at appellant. Six spent casings, of

4

which four were .40-caliber and two were nine-millimeter, were recovered. The "'RP'" stamped nine-millimeter casing was recovered on a sidewalk near the alley while the "'FC'" stamped casing was found in the grass next to the alley. The six casings were matched to three guns, each of which had been fired twice. The four .40 casings were from the rounds fired by the officers' guns. The two nine-millimeter casings were from appellant's gun. Appellant's gun had a chambered round and the magazine contained one Federal cartridge and four Remington Peters cartridges. To fire the gun, appellant had to deactivate two safety mechanisms and exert six pounds of force.

The prosecution's firearm expert testified that in his experience, if he were the one being shot at and if he were firing back, he might not hear any other shots because of his focus on firing his gun and the echo from his own shots. He opined a person could save his spent cartridges and have them refilled but people who did this usually were hunters experimenting with specific types of gunpowder. He pointed out that cartridges cost only $10 for 25 and less for those with reused casings in contrast to the cost of refilling casings which required machinery costing hundreds of dollars in addition to the cost of gunpowder and bullets.

Detectives Gregory Krabbe and Mark McGuire, his partner, who investigated the shooting, concluded Officers Reyes and Garcia had been shot at.

Appellant presented evidence to show there were no signs of impact where appellant's gun had landed and that there was an absence of burn marks which would have suggested appellant had fired a gun close to his clothing.

## DISCUSSION

### I.     Substantial Evidence Supports Count 1 Conviction

Appellant contends his count 1 conviction for assault with a semiautomatic firearm on Officer Reyes (§ 245, subd. (d)(2)) is not supported by the evidence, because "there was insufficient evidence that appellant did an act with a semiautomatic firearm that by its nature would directly and probably result in the application of force to a person."

5

"The law applicable to a claim of insufficiency of the evidence is well settled: '"In reviewing [a claim regarding] the sufficiency of the evidence, we must determine 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] '[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We '"presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."' [Citation.] If we determine that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, the due process clause of the United States Constitution is satisfied [citation], as is the due process clause of article I, section 15, of the California Constitution [citation].' [Citations.]" (*People v. Carter* (2005) 36 Cal.4th 1114, 1156.) This standard applies to both direct and circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.)

Appellant suggests it is simply suspicion that he assaulted Officer Reyes with his nine-millimeter gun, because Officer Reyes merely saw the gun in appellant's hand and did not see or hear him fire the gun. He contends Officer Reyes's lack of perception cannot be saved by "[t]he fact that two expended [nine-millimeter] casings were later found, one beneath appellant and another some distance away in the yard of a house on the other side of the alley not far from the gun" inasmuch as "[t]here are numerous other *plausible* explanations for the expended rounds and the location of the gun" (italics added). Appellant contends that while he was "running with the gun in hand when he was shot [he] *most likely involuntarily* fired off a pair of rounds on being hit or as he attempted to throw the gun away" (italics added).

We are not persuaded. Appellant's position is grounded in speculation, which is not evidence (*People v. Mendoza* (2000) 24 Cal.4th 130, 174; *People v. Kraft* (2000) 23

6

Cal.4th 978, 1035 [speculation and speculative inferences not evidence]), and appellant invites this court to give credence to such speculation over the evidence believed by the trier of fact.

Initially, the record reflects that in order to fire the gun, appellant had to have deactivated two safety mechanisms and exerted six pounds of force. The evidence therefore refutes his supposition that his gun accidently fired.

The jury was entitled to find appellant in fact had fired two shots at Officer Reyes based on the circumstantial evidence of the locations of the two nine-millimeter casings and appellant's nine-millimeter gun, all of which were recovered in the general vicinity of the shooting, and the fact that Sergeant Long and Detective Armond had heard five to six shots, only four of which were attributable to the guns shot by Officers Garcia and Reyes. The jury also was entitled to infer that Officer Reyes did not see or hear appellant's gun fire two shots, because his focus was on shooting appellant. Also, the echo from his own shots distracted him from hearing the shots fired by appellant. The fact that Officer Reyes did not perceive the gunshots fired by appellant does not dispel the inference that appellant had fired two shots at Officer Reyes.

## II. Substantial Evidence Supports Discharge of Firearm Finding

Appellant contends the evidence is insufficient to support the jury finding that he personally and intentionally discharged a firearm (§ 12022.53, subd. (c)). Essentially, appellant renews his claims above as to why the evidence fails to support his conviction for assault with a semiautomatic firearm on a peace officer (count 1). He contends neither Officers Reyes nor Garcia saw or heard appellant fire his gun; the gun could have accidentally discharged as appellant ran "with the gun in hand when he was shot [and] most likely involuntarily fired off a pair of rounds on [his] being hit or as he attempted to throw the gun away"; and "[t]here are numerous other plausible explanations for the expended rounds and the location of the gun."

7

We reject appellant's contentions as based on improper speculation.  Additionally, substantial evidence, as recounted above, supports the finding that appellant both personally and intentionally discharged his nine-millimeter gun at Officer Reyes.

## III.    No *Pitchess* Violation Shown

Appellant contends, and the People concede, he is entitled to review by this court of the police personnel records to determine whether the trial court abused its discretion by failing to turn over to the defense all discoverable materials in those records.  No abuse occurred.

On April 8, 2011, the trial court conducted an in-camera hearing on appellant's *Pitchess* motion for discovery of any materials in the personnel records of Officer Reyes pertaining to complaints of excessive force.[5]  Of the 16 reports reviewed, the trial court ordered discovery as to six, because they pertained to "either excessive force or . . . directly to falsifying official police records" and denied discovery as to the remaining 10 reports.

"Trial courts are granted wide discretion when ruling on motions to discover police officer personnel records.  [Citation.]" (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.)  "To obtain relief, . . . a defendant who has established that the trial court erred in denying *Pitchess* discovery must also demonstrate a reasonable probability of a different outcome had the evidence been disclosed.  [Citations.]" (*People v. Gaines* (2009) 46 Cal.4th 172, 182–183.)

We have reviewed the sealed in-camera *Pitchess* hearing transcript.[6]  Although the personnel records are not before us, the trial court set forth sufficiently a summary of the

---

**5**    Appellant's *Pitchess* motion directed at Officer Garcia was for complaints of excessive force or false police reports.  The trial court found none of the five reports produced for Officer Garcia were relevant and declined to order any information produced.

**6**    This court ordered the trial court to transmit to this court a copy of the sealed reporter's transcript of the in-camera *Pitchess* hearing and copies, under seal, of the peace

8

records for which discovery was not ordered to enable this court to determine these records are irrelevant to issues of excessive police force and falsifying official police records. The trial court therefore did not abuse its discretion in denying discovery.

## IV.     Reversal of Count 3 Sentence and Remand Warranted

The jury found appellant guilty as charged in count 3 of possession of a firearm by a felon (former § 12021, subd. (a)(1)). Appellant admitted, and the trial court found true, the allegation that he had suffered a strike under the Three Strikes law as to count 3. The court declined to exercise its discretion to dismiss the strike pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

In sentencing appellant on count 3, the trial court selected the two-year middle term and ordered that term to be served concurrently with the sentence imposed on count 1 pursuant to section 654, because "it's one and the same act of both possession and using it in the assault on the peace officer in count one."[7]

Both appellant and the People agree the trial court committed unauthorized sentencing error by failing to double appellant's two-year term to four years for the strike prior. We concur.

The parties disagree regarding the applicability of the multiple punishment bar of section 654. Appellant' position is the multiple punishment bar for a single act under section 654 is applicable, because the trial court found counts 1 and 3 were based on the

---

officers' personnel records reviewed at the hearing if those records had been retained by the trial court. We received only the sealed reporter's transcript and have augmented the record with this sealed transcript and the transcript of other proceedings on April 8, 2013.

[7]     A conflict in the record exists between the clerk's transcript recital that the court stayed the sentence on count 3 and the recitals in the reporter's transcript that the court ordered the sentence on count 3 to be served concurrently. The judgment consists of the oral pronouncement of sentence. Unless the record clearly indicates the reporter's transcript does not in fact correspond to the sentence orally pronounced by the trial court, the recitals in that transcript trump any contrary recitals in the clerk's transcript. In this instance, the recitals in the reporter's transcript control. (See, e.g., *People v. Lawrence* (2009) 46 Cal.4th 186, 194, fn. 4; *People v. Harrison* (2005) 35 Cal.4th 208, 226; *People v. Price* (2004) 120 Cal.App.4th 224, 242.)

9

same assaultive conduct and consecutive sentencing under the Three Strikes law is mandated only where the underlying offenses were "not committed on the same occasion, and not arising from the same set of operative facts" (§ 667, subd. (c)(6)).

The People contend section 654 is inapplicable under the circumstances here, because "where possession of a gun is '"antecedent [to] and separate" from' its use in assaulting a peace officer, section 654 does not apply" and point out the gist of Gerardo's testimony was that appellant already carried the gun at the party before he assaulted Officer Reyes. [8]

Appellant and the People each concede on remand, if the trial court were to determine that the offenses in counts 1 and 3 were committed on the same occasion or arose from the same set of operative facts, then a consecutive sentence on count 3 is not mandated under the Three Strikes law. (Cf. § 667, subd. (c)(6).) They also acknowledge that if this were the case, the trial court retains discretion to impose a consecutive or concurrent sentence on count 3. Appellant contends the court then may "employ section 654 under that section's own standard."

Initially, we conclude the trial court erred in imposing a concurrent sentence pursuant to section 654. The appropriate procedure for applying the multiple punishment bar of section 654 is to stay imposition of the sentence, not to impose a concurrent sentence. (*People v. Benson* (1998) 18 Cal.4th 24, 38–40.)

We further conclude the court erred in failing to determine whether a consecutive sentence on count 3 is mandatory under the Three Strikes law, and, if not, to exercise its discretion to impose a consecutive or concurrent sentence on that count. Under the Three Strikes law, a consecutive sentence is mandatory if the felony offenses were "not committed on the same occasion, and not arising from the same set of operative facts" (§ 667, subd. (c)(6)). In contrast, "where a sentencing court determines that two or more

_____

[8]     The People's reliance is misplaced on Gerardo's testimony that appellant showed him the gun a couple of days before the assault on Officer Reyes. The jury found appellant guilty of possession of a firearm by a felon as charged in count 3 of the information, which alleged the date of possession to be the same date as the assault.

current felony convictions were either 'committed on the same occasion' or 'aris[e] from the same set of operative facts' . . . consecutive sentencing is not required under the Three Strikes law, but is permissible in the trial court's sound discretion." (*People v. Lawrence* (2000) 24 Cal.4th 219, 233; see generally, §§ 669, subd. (a), 1170.1, subd. (a).)

It is incumbent on the trial court to decide whether the underlying felonies in counts 1 and 3 were sufficiently separated in time and space such that they were not committed "'on the same occasion.'" We note appellant, a felon, possessed the gun about two hours before the assault on Officer Reyes, and such possession was at a location different from the location of the assault. Additionally, the court must decide whether these felonies arose from "'the same set of operative facts,'" which determination involves an inquiry into whether or not the felonies share "common acts or criminal conduct that serves to establish the elements of the current felony offenses" and a weighing of "the extent to which common acts and elements of such offenses unfold together or overlap, and the extent to which the elements of one offense have been satisfied, rendering that offense completed in the eyes of the law before the commission of further criminal acts constituting additional and separately chargeable crimes." (*People v. Lawrence, supra,* 24 Cal.4th 219, 229, 233; cf. *People v. DeLoza* (1998) 18 Cal.4th 585, 599; *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1566–1567.) In this regard, we observe the offense of possession of a firearm by a felon had been completed before appellant assaulted Officer Reyes. The assault offense was additional to the possession offense, and both offenses were separately chargeable. The commission of these offenses did not "unfold" nor did they "overlap," because appellant's possession of the gun at the party was wholly unconnected in time, space, and intent with his possession of the gun in assaulting Officer Reyes.

The parties do not address the matter of how the consecutive sentence, if mandatory, is to be calculated. In making this calculation, we are guided by *People v. Nguyen* (1999) 21 Cal.4th 197, in which our Supreme Court concluded, in the context of a second striker, that the provision of section 1170.1, subdivision (a), which fixes the

11

consecutive subordinate terms at one-third the middle term, applies to a mandatory consecutive sentence under the Three Strikes law. Noting under the Three Strikes law, "[t]here shall not be an aggregate term limitation for purposes of consecutive sentencing for any subsequent felony conviction" (§§ 667, subd. (c)(1), 1170.12, subd. (a)(1)), the Court explained this provision of section 1170.1 simply "*defines* the length of individual subordinate terms" and thus, is not an aggregate term *limitation*. (*People v. Nguyen, supra,* at pp. 205, 207.) Accordingly, the term of appellant's consecutive sentence on count 3, if mandated, shall be 16 months, or one-third of four years, which is double the two-year middle term for his strike.

Lastly, we conclude section 654 is inapplicable to appellant's sentences under the Three Strikes law. Section 654 proscribes multiple punishment for an indivisible course of conduct which is incident to a single intent and objective (*Neal v. State of California* (1960) 55 Cal.2d 11, 19). The trial court erroneously concluded such a situation existed here because the same conduct underlies appellant's conviction for possession of a firearm by a felon and his conviction for assault with a semiautomatic firearm on Officer Reyes. The record establishes that prior to assaulting Officer Reyes, appellant already was in possession of the gun and he did not possess the gun simply for the purpose of assaulting Officer Reyes. Section 654 therefore does not bar separate punishment for these offenses. (See, e.g., *People v. Bradford* (1976) 17 Cal.3d 8, 22; *People v. Mesa* (2012) 54 Cal.4th 191, 193–195; *People v. Jones* (2002) 103 Cal.App.4th 1139, 1142–1149.)

## DISPOSITION

The sentence on count 3 is reversed and the matter is remanded to the trial court with directions to resentence appellant on count 3 consistent with the views expressed in this opinion.  In all other respects, the judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

FERNS

We concur:



_____, P. J.

     BOREN



_____, J.

     CHAVEZ

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13